UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-127-KKC

JENNY SHORTRIDGE,                                                                       PLAINTIFF

v.                               **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security                                       DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff Jenny Shortridge's Motion for Summary Judgment [R. 8], Defendant Commissioner Astrue's Motion for Summary Judgment [R. 10], the Magistrate Judge's Report and Recommendation [R. 12], recommending that Plaintiff's Motion be denied and Defendant's Motion be granted, and Plaintiff's Objections to the Report and Recommendation [R. 13].

Pursuant to 28 U.S.C. § 636(b)(1), the Court must make a *de novo* determination of those portions of the Magistrate Judge's Report and Recommendation to which objections are made. For the reasons stated below, the Magistrate Judge's Report and Recommendation is ADOPTED over the objections of Plaintiff Shortridge. As such, the Plaintiff's Motion for Summary Judgment is DENIED, and the Defendant's Motion for Summary Judgment is GRANTED.

**I.  Background**

Plaintiff Shortridge filed an application for Disability Insurance Benefits and Supplemental Security Income on July 25, 2003. This application was denied initially and on reconsideration. Administrative Law Judge (hereinafter "ALJ") James D. Kemper, Jr. conducted an administrative hearing on November 16, 2005, at which Shortridge and Vocational Expert

Dean Owen testified. On August 25, 2006, the ALJ found that Shortridge had been disabled within the meaning of the Social Security Act for the period beginning June 18, 2003 and ending July 26, 2004. The ALJ found that Shortridge's condition had improved after July 26, 2004 such that she was no longer disabled within the meaning of the Social Security Act. On May 16, 2007, the Appeals Council declined to review the ALJ's decision, and the Social Security Administration adopted the ALJ's opinion as its final decision. Shortridge brought the present action in this Court to review the ALJ's decision; the matter was referred to the Magistrate Judge.

Shortridge alleged an onset date of June 18, 2003 for her disability. She listed panic attack, anxiety, and depression as the sources of her disability. In May 2004, Shortridge was treated for depression and panic attacks, but as of July 26, 2004, Shortridge began showing a marked improvement in these symptoms. Shortridge did not originally list any physical conditions as a source of her disability. Instead, Shortridge stated in an affidavit on April 15, 2004, that she suffers from "[n]erve problems, panic attacks, depression, anxiety, chest pains, pain in neck & left arm. Shoulders & back pain blackouts[.]" At her hearing before the ALJ, Shortridge stated that she stopped working "Because of my nerves," and not due to any specific physical problem. Later in the hearing, after being questioned about her physical condition, Shortridge testified that she has a maximum walking distance of only two to three yards. She later changed this estimate of her walking ability to ten minutes. Shortridge's husband reported that she had no physical problems except with her hands, while her father reported that she had numerous physical problems. Shortridge's father also reported that she could walk thirty-five to forty-five minutes before needing rest.

Shortridge was examined by Dr. Stephen Nutter, who issued an exam report on

September 18, 2003.  This report stated that Shortridge had described shortness of breath in connection with panic attacks, chest pain, and pain in the shoulders, legs, and arms.  The report also repeated Shortridge's statement that, during panic attacks, "her arms and legs and shoulders will all stiffen up, and they get sore after that," and that Shortridge "denies joint pain, back or neck pain."  In the report, Dr. Nutter diagnosed shortness of breath, chest pain, shoulder pain, and headaches.  Dr. Nutter's report further stated that Shortridge's gait was normal, that her musculoskeletal and neurological exams were benign, and that she could walk on her heels and toes and squat without difficulty.  In a further part of his report, Dr. Nutter opined that "[t]he claimant's ability to perform bending, lifting, carrying heavy objects, climbing, crawling and squatting would be mild to moderately impaired due to joint pain."

   The Magistrate Judge reviewed the decision of the ALJ and recommending affirming the decision, denying the Plaintiff's Motion for Summary Judgment, and granting the Defendant's Motion for Summary Judgment.  Shortridge complained that the ALJ had erred by failing to adopt or address Dr. Nutter's report about her physical medical conditions.  The Magistrate Judge disagreed, stating that Shortridge had provided no objective medical evidence of any physical conditions, that Dr. Nutter's assessment of her physical conditions was based solely on Shortridge's subjective descriptions of her pain, and that the physical ailments she described are wholly incident to her mental conditions.  Shortridge filed objections to this Report and Recommendation.  Shortridge argued that she had presented medical evidence of her physical disabilities, the ALJ was required to adopt or address Dr. Nutter's opinion, which was not done, and that Shortridge had in fact claimed physical medical conditions through the above-mentioned affidavit.

**II.     Analysis of Objections to Report and Recommendation**

Shortridge's first objection to the Magistrate Judge's Report and Recommendation is to its finding that "Plaintiff has failed to provide any objective medical evidence to support her claims of a physical disability." Report and Recommendation, at 1. Shortridge refers to the medical report issued by Dr. Nutter as objective evidence of her alleged physical disabilities, and accordingly finds error in the ALJ's failure to adopt or address the portion of Dr. Nutter's report discussing Shortridge's physical conditions. For this contention, Shortridge cites to Social Security Ruling 96-8p, the relevant part of which states as follows: "*Medical opinions*. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. Rul. 96-8p. Shortridge argues that this ruling required the ALJ to consider Dr. Nutter's report about her physical conditions, as "Social Security Ruling 96-8p does not provide for any exceptions, regarding the duty to consider and address a medical source opinion when in conflict with the Plaintiff's RFC." Objections to Report and Recommendation, at 1-2.

The Court does not agree with Shortridge that the ALJ committed error in failing to adopt, or explain its rejection of, the portion of Dr. Nutter's medical report pertaining to Shortridge's physical conditions. The Sixth Circuit Court of Appeals dealt with this very issue in the case of *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004). In *Wilson*, the Court reversed the ALJ's decision because he provided no explanation for his rejection of a doctor's opinion. *See Wilson*, 378 F.3d 541. The doctor in *Wilson*, however, was a *treating source*. The *Wilson* Court specifically relied on the Social Security regulations' command that

the ALJ "give good reasons" for the weight given to a "treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *Wilson*, 378 F.3d at 545. In *Smith v. Commissioner of Social Security*, 482 F.3d 873 (6th Cir. 2007), the Sixth Circuit held that an ALJ is only required to provide explanations for the rejection of treating-source opinions; for other types of medical opinions, the ALJ need not provide any rationale at all for rejecting or failing to address them.[1] *Id.* at 876.

Dr. Nutter's medical report is not a treating-source opinion because Dr. Nutter is not a treating source. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided, the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. "A physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.'" *Smith*, 482 F.3d at 876 (quoting 20 C.F.R. § 404.1502). Dr. Nutter, however, apparently examined Shortridge only once, and this one time was only at the behest of the Social Security Administration. A single meeting with a patient can hardly qualify as having "an ongoing treatment relationship with the claimant." 20 C.F.R. § 404.1502. Since Dr. Nutter is not a treating source, his medical report

---

[1] *Smith* specifically found that the failure to consider two medical opinions did not violate a directive in the social security regulations at 20 C.F.R. § 404.1527(d)(2). *See* 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight . . . . We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). The effect of Social Security Ruling 96-8p was not discussed by the Court, even though the section of the Ruling that Shortridge relies on was obviously implicated by that case. Since the *Smith* Court did not reverse the ALJ's decision for failing to explain the rejection of two medical opinions, despite the applicability of *both* 20 C.F.R. § 404.1527(d)(2) *and* Social Security Ruling 96-8p, this Court concludes that *Smith*'s "treating-source requirement" implicitly applies to Social Security Ruling 96-8p, as well as to 20 C.F.R. § 404.1527(d)(2). The *Smith* reasoning therefore applies to Shortridge's case: the ALJ would only have been required to provide an explanation for his failure to adopt Dr. Nutter's medical opinion regarding Shortridge's alleged physical disabilities if Dr. Nutter were a treating source. As explained below, Dr. Nutter is not a treating source; therefore, no error was committed by the ALJ in not explaining his rejection of this medical opinion.

discussing Shortridge's description of her physical pain did not merit an explanation for its rejection.

Even had Dr. Nutter's medical report been considered by the ALJ, there would still be no objective medical evidence of physical disabilities to support Shortridge's claim for benefits. It is the burden of the plaintiff to provide objective medical evidence in order to be entitled to a disability finding. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508. Dr. Nutter's report that Shortridge suffers from arm, leg, and shoulder pain, and likely has mild to moderate restrictions on her physical exertion, all stems from Shortridge's own subjective statements of her pain symptoms. Subjective descriptions of pain symptoms cannot alone establish sufficient medical evidence to support a finding of disability. *See* 20 C.F.R. § 404.1529(a). Additionally, this report was issued during the time period for which Shortridge was found to be disabled for her mental conditions. There is nothing in Dr. Nutter's report indicating any long-term physical disabilities that would last beyond July 27, 2004, and the report identifies no underlying physical process that might cause even the instances of pain reported by Shortridge during the examination.

Furthermore, Dr. Nutter's report was later reviewed by another consulting physician, Dr. Saranga. As Dr. Saranga stated when reviewing Dr. Nutter's assessment, a physical examination did not show any limited range of motion, such as the kind Dr. Nutter described in his report. Dr. Saranga considered Dr. Nutter's opinion of Shortridge's physical limitations to be "not supported with objective findings since patient is not taking any treatment for alleged impairment." Dr. Saranga's report further stated that "Pulmonary studies are normal," and that "Chest x-ray is

normal." Not only does Dr. Saranga's report clearly undermine whatever evidentiary value Dr. Nutter's assessment contained, it actually provides further evidence *against* Shortridge's claims of physical disability.

Nothing else in the record supports Shortridge's contentions regarding her physical disabilities; in fact, much of it undermines her claims. As the Magistrate Judge noted, Shortridge's statements during her administrative hearing that she suffers from physical pain were all incident to her mental condition; they did not appear to stem from any underlying physical disability. Moreover, Shortridge's statements at her hearing and her third-party reports from her husband and her father are contradictory regarding the existence and extent of Shortridge's physical limitations. Physical reports from Dr. Sriniva Ammisetty contain no references to fibrommyalgia, for which Shortridge claims she was being treated, and no abnormalities were noted in Dr. Ammisetty's examination forms. Shortridge also claimed to suffer from blackouts that made her unable to drive, but she apparently did not mention this to Dr. Nutter, and none of the treatment notes after July 27, 2004 mention blackouts occurring. In short, nothing in the administrative record provides objective medical evidence to support the finding of a physical disability past the time period of July 27, 2004. This objection is without merit.

Shortridge also objects to the Report and Recommendation finding that "Plaintiff did not list any physical conditions as sources of her disability." Report and Recommendation, at 5. Shortridge states that, although her disability benefits application did not list any physical complaints as the cause of her disability, she submitted an affidavit on April 15, 2004, nine months after her disability application, describing "[n]erve problems, panic attacks, depression,

7

anxiety, chest pains, *pain in neck & left arm. Shoulders & back pain* blackouts[.]" (emphasis added). Even ignoring the obvious question of why such physical symptoms were not deemed important enough to be originally listed in the benefits application, and were instead only brought up nearly a year after the application was filed, this affidavit is irrelevant to the disability decision. The affidavit merely describes pain symptoms in much the same fashion as they were described to Dr. Nutter and related in his report. The physical pain statements in the affidavit provide no objective medical evidence that would support a finding of physical disability for the time period after July 27, 2004. As such, the affidavit cannot possibly affect the propriety of the ALJ's decision. This objection is without merit.

**WHEREFORE**, For the reasons stated above:

1. The Report and Recommendation is **ADOPTED** as the opinion of this Court;

2. The Plaintiff's Motion for Summary Judgment is **DENIED**; and

3. The Defendant's Motion for Summary Judgment is **GRANTED**.

Dated this 4th day of January, 2008.



Signed By:
*Karen K. Caldwell*
United States District Judge